UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SEVENTH REGIMENT ARMORY CONSERVANCY, INC.,

                                    Plaintiff,

                - against -

HOPE KNIGHT, in her official capacity as President, Chief Executive Officer, and Commissioner of Empire State Development Corporation,

                                    Defendant.

---

Case No. 1:25-cv-7373-GBD

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

LETITIA JAMES
Attorney General
State of New York
28 Liberty Street
New York, New York 10005
Tel.: (212) 416-8673
*Attorney for Defendant*

YUVAL RUBINSTEIN
Special Litigation Counsel
    *of Counsel*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ....................................................................................................... 3

STANDARD OF REVIEW ....................................................................................... 6

ARGUMENT ............................................................................................................. 7

   I.   THE COURT SHOULD DENY PLAINTIFF'S MOTION ON ABSTENTION
       GROUNDS UNDER *YOUNGER* AND *COLORADO RIVER* ........................... 7

      A.  *Younger* Abstention ................................................................................. 7

      B.  *Colorado River* Abstention.................................................................... 8

   II.  IN THE ALTERNATIVE, PLAINTIFF'S CONSTITUTIONAL CHALLENGE
       TO CHAPTER 659 IS BARRED BY *RES JUDICATA* ................................... 11

  III.  PLAINTIFF FAILS TO DEMONSTRATE IT IS ENTITLED TO
       PRELIMINARY INJUNCTIVE RELIEF ....................................................... 13

      A.  Plaintiff is Unable to Establish Irreparable Harm Based Upon its
          Delay in Seeking Injunctive Relief ........................................................ 13

      B.  Plaintiff is Unable to Establish a Likelihood of Success on the Merits of its
          Constitutional Claims............................................................................ 14

          1.   Contracts Clause ......................................................................... 14

          2.   Takings Clause............................................................................ 19

          3.   Substantive and Procedural Due Process Claims........................... 21

      C.  The Balance of Equities and Public Interest Favor Defendant ............... 23

  IV.  THE GREYS SHOULD BE JOINED AS A NECESSARY PARTY............................. 24

CONCLUSION........................................................................................................ 25

CERTIFICATION ................................................................................................... 26

## TABLE OF AUTHORITIES

CASES                                                                                   PAGE(S)

*1245 Stratford, LLC v. Osboume,*
    84 Misc.3d 1228(A), (Civ. Ct. Bronx Cnty. 2024) ................................................10

*517 West 212 St LLC v. Musik-Ayala,*
    2018 WL 2048824 (Civ. Ct. N.Y. Cnty. Mar. 16, 2018) .........................................10

*74 Pinehurst LLC v. New York,*
    59 F.4th 557 (2d Cir. 2023) ...........................................................................19, 22

*Abbatiello v. Wells Fargo Bank, N.A.,*
    No. 15 Civ. 4210, 2015 WL 5884797 (E.D.N.Y. Oct. 8, 2015) ...............................8

*Abe v. New York Univ.,*
    No. 14 Civ. 9323, 2016 WL 1275661 (S.D.N.Y. Mar. 30, 2016) ................9, 10, 11

*Allied Structural Steel Co. v. Spannaus,*
    438 U.S. 234 (1978)........................................................................................15

*Bd. of Managers of Soho Int'l Arts Condo. v. City of N.Y.,*
    No. 01 Civ. 1226, 2004 WL 1982520 (S.D.N.Y. Sept. 8, 2004) .............................17

*Brody v. Village of Port Chester,*
    345 F.3d 103 (2d Cir. 2003)............................................................................24

*Brody v. Village of Port Chester,*
    434 F.3d 121 (2d Cir. 2005)............................................................................23

*Buffalo Teachers Fed'n v. Tobe,*
    464 F.3d 362 (2d Cir. 2006)............................................................................20

*Cedar Point Nursery v. Hassid,*
    594 U.S. 139 (2021)........................................................................................15

*CFCU Community Credit Union v. Hayward,*
    552 F.3d 253 (2d Cir. 2009)............................................................................16

*Chunn v. v. Amtrak,*
    916 F. 3d 204 (2d Cir. 2019)...........................................................................23

*Clark v. Bloomberg,*
    No. 10 Civ. 1263, 2010 WL 1438803 (E.D.N.Y. Apr. 12, 2010)............................8

*Cmty. Hous. Improvement Program v. City of N.Y.,*
    59 F.4th 540 (2d Cir. 2023) ....................................................................19, 20, 22

*Colorado River Water Conservation Dist. v. U.S.*,
424 U.S. 800 (1976) ........................................................................................ *passim*

*Connecticut State Police Union v. Rovella*,
36 F.4th 54 (2d Cir. 2022) ..........................................................................17, 18

*Connolly v. Pension Ben. Guar. Corp.*,
475 U.S. 211 (1986) ................................................................................................20

*Council for Responsible Nutrition v. James*,
No. 24 Civ. 1881, 2024 WL 1700036 (S.D.N.Y. Apr. 19, 2024) ...........................14

*Credit-Based Asset Servicing and Securitization, LLC v. Lichtenfels*,
658 F.Supp.2d 355 (D. Conn. 2009) ......................................................................9

*Diamond 'D' Constr. Corp. v. McGowan*,
282 F.3d 191 (2d Cir. 2002) ...................................................................................8

*DLC Management Corp. v. Town of Hyde Park*,
163 F.3d 124 (2d Cir. 1998) ..................................................................................21

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
411 F.3d 384 (2d Cir. 2005) ...........................................................................20, 22

*Elmsford Apartment Assoc., LLC v. Cuomo*,
469 F.Supp.3d 148 (S.D.N.Y. 2020), *appeal dismissed sub. nom.*, *36 Apartment Assoc., LLC v. Cuomo*, 860 F.App'x 215 (2d Cir. 2021).....................19, 21, 22

*Energy Reserves Group, Inc. v. Kansas Power & Light Co.*,
459 U.S. 400 (1983) ...............................................................................................16

*Ewers v. Empire State Recovery Fund*,
No. 19 Civ. 4599, 2019 WL 13498513 (S.D.N.Y. July 8, 2019) ...........................19

*Ex parte Young*,
209 U.S. 123 (1908) ...............................................................................................19

*Exxon Corp. v. Eagerton*,
462 U.S. 176 (1983) ...............................................................................................16

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
559 F.3d 110 (2d Cir. 2009) ..................................................................................13

*First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*,
862 F.Supp.2d 170 (E.D.N.Y. 2012) .......................................................................9

*Glidedowan, LLC v. N.Y. State Dep't of Health*,
768 F.Supp.3d 503 (W.D.N.Y. 2025) .....................................................................22

*Goldstein v. Hochul*,
    680 F.Supp.3d 370 (S.D.N.Y. 2023)..................................................................7, 13, 23

*Goldstein v. Pataki*,
    516 F.3d 50 (2d Cir. 2008)..................................................................................21

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
    481 F.3d 60 (2d Cir. 2007)....................................................................................6

*Home Bldg. & Loan Ass'n v. Blaisdell*,
    298 U.S. 398 (1934)....................................................................................15, 17

*Johnson v. Murphy*,
    527 F.Supp.3d 703 (D.N.J. 2021), *appeal dismissed*, 2022 WL 767035 (3d
    Cir. Mar. 14, 2022) ............................................................................................22

*Kern v. Joyce*,
    857 F.App'x 691 (2d Cir. 2021) ........................................................................12

*Kulawy v. U.S.*,
    917 F.2d 729 (2d Cir.1990)................................................................................24

*Mahmood v. Research in Motion, Ltd.*,
    905 F.Supp.2d 498 (S.D.N.Y. 2012), *aff'd*, 515 F.App'x 891 (2d Cir. 2013).........................13

*Mann v. Alvarez*,
    No. 96 Civ. 2641, 1996 WL 535540 (S.D.N.Y. Sept. 20, 1996).............................................11

*Manna v. Greenburgh No. 11 School Dist.*,
    2 F.Supp.2d 461 (S.D.N.Y. 1998) ....................................................................10

*Maryland v. King*,
    567 U.S. 1301 (2012)........................................................................................24

*MasterCard Int'l, Inc. v. Visa Int'l Serv. Ass'n.*,
    471 F.3d 377 (2d Cir. 2006)..............................................................................24

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997)............................................................................................2

*Middlesex County Ethics Committee v. Garden State Bar Ass'n*,
    457 U.S. 423 (1982)............................................................................................8

*Miller v. McDonald*,
    130 F.4th 258 (2d Cir. 2025) ............................................................................22

*Nationwide Gen. Ins. Co. v. Rael Maint. Corp.*,
    23 Civ. 4433, 2024 WL 1805544 (S.D.N.Y. Apr. 24, 2024)................................................10

*Nekrilov v. City of Jersey City*,
   45 F.4th 662 (3d Cir. 2022) ...........................................................................................18

*Ochei v. Lapes*,
   No. 19 Civ. 3700, 2020 WL 528705 (S.D.N.Y. Jan. 31, 2020)....................................8

*Pantoja v. Scott*,
   No. 96 Civ. 8593, 2001 WL 1313358 (S.D.N.Y. Oct. 26, 2001) ...............................12

*Penn Central Transp. Co. v. City of N.Y.*,
   438 U.S. 104 (1978)..............................................................................................17, 21

*Plymouth Mills, Inc. v. FDIC*,
   876 F.Supp. 439 (E.D.N.Y. 1995) ..............................................................................20

*Ray Legal Consulting Group v. Gray*,
   37 F.Supp.3d 689 (S.D.N.Y. 2014) ............................................................................11

*Renew 81 for All by Fowler v. Fed. Highway Admin.*,
   No. 22 Civ. 1244, 2024 WL 3488407 (W.D.N.Y. July 19, 2024)...............................14

*Sanitation & Recycling Indus., Inc. v. City of N.Y.*,
   107 F.3d 985 (2d Cir. 1997)........................................................................................15

*Schlagler v. Phillips*,
   166 F.3d 439 (2d Cir.1999)...........................................................................................7

*Scott v. Greenville County*,
   716 F.2d 1409 (4th Cir. 1983) .....................................................................................23

*Silber v. Barbara's Bakery, Inc.*,
   950 F.Supp.2d 432 (E.D.N.Y. 2013) ...........................................................................13

*Southview Associates, Ltd. v. Bongartz*,
   980 F.2d 84 (2d Cir. 1992)...........................................................................................20

*Spargo v. N.Y. State Com'n on Judicial Conduct*,
   351 F.3d 65 (2d Cir. 2003)............................................................................................7

*Sprint Communications, Inc. v. Jacobs*,
   571 U.S. 69 (2013)..........................................................................................................8

*St. Bartholomew's Church v. City of N.Y.*,
   914 F.2d 348 (2d Cir. 1990)..........................................................................................21

*Stensrud v. Rochester Genesee Regional Transp. Auth.*,
   2024 WL 2104604 (2d Cir. May 10, 2024) .................................................................11

*Sullivan v. Nassau Cnty. Interim Finance Auth.*,
  959 F.3d 54 (2d Cir. 2000)........................................................................14, 16, 17

*Sussman v. Crawford*,
  488 F.3d 136 (2d Cir. 2007)..................................................................................6

*Sveen v. Melin*,
  584 U.S. 811 (2018)........................................................................................14, 15

*Telesco v. Telesco Fuel and Masons' Material, Inc.*,
  765 F.2d 356 (2d Cir. 1985)...........................................................................8, 11

*TM Park Ave. Associates v. Pataki*,
  214 F.3d 344 (2d Cir. 2000)................................................................................20

*Vozzolo v. Air Canada*,
  No. 20 Civ. 3503, 2021 WL 5113387 (S.D.N.Y. Nov. 3, 2021) .............................7

*Wandyful Stadium, Inc. v. Town of Hempstead*,
  959 F.Supp. 585 (E.D.N.Y. 1997) ........................................................................7

*Weaver v. N.Y. State Office of Court Admin.*,
  No. 22 Civ. 559, 2023 WL 2500390 (N.D.N.Y. Mar. 14, 2023).............................8

*Whole Women's Health v. Jackson*,
  595 U.S. 30 (2021)..............................................................................................24

*Winter v. NRDC, Inc.*,
  555 U.S. 7 (2008)..................................................................................................6

*Worthen Co. v. Kavanaugh*,
  295 U.S. 56 (1935)..............................................................................................15

*Younger v. Harris*,
  401 U.S. 37 (1971)........................................................................................2, 7, 8

**CONSTITUTIONS**

U.S. Const.
  Art. I § 10, cl. 1 ........................................................................................ *passim*
  Amend. V................................................................................................... *passim*
  Amend. IV.................................................................................................. *passim*

**FEDERAL STATUTES**

42 U.S.C. § 1983 ....................................................................................................1

**STATE STATUTES**

2004 N.Y. Laws ch. 482 ............................................................................................4, 16

2024 N.Y. Laws ch. 659 ....................................................................................... *passim*

N.Y. Military Law § 180-a ................................................................................... *passim*

**RULES**

Fed. R. Civ. P. 19(a)(1)(A) ...........................................................................................24

Fed. R. Civ. P. 19(a)(1)(B)(i).......................................................................................24

Fed. R. Civ. P. 19(a)(1)(B)(ii)......................................................................................24

Defendant Hope Knight ("Defendant"), in her official capacity as Commissioner of the Empire State Development Corporation ("ESD"), respectfully submits this memorandum of law, together with the accompanying Declaration of Yuval Rubinstein ("Rubinstein Decl."), in opposition to Plaintiff Seventh Regiment Armory Conservancy, Inc.'s ("Plaintiff") motion for a temporary restraining order ("TRO") and preliminary injunction (ECF No. 8).

## PRELIMINARY STATEMENT

In 2004, the New York State Legislature enacted a statute that permitted Plaintiff, a nonprofit organization, to redevelop and operate the Park Avenue Armory ("Armory") as an arts and cultural center. Pursuant to that statute, Plaintiff executed a lease with the State in November 2006. Plaintiff moved into the Armory fully aware that the Knickerbocker Greys ("Greys"), an after-school program for children ages 6 to 16, had continuously occupied a small space in the Armory since 1902. The Greys continued to remain in their historical space for several years. But in January 2023, Plaintiff commenced an eviction proceeding against the Greys in New York County Civil Court that remains pending.

In 2024, the Legislature enacted a new statute, Chapter 659, that amended the earlier 2004 statute to permit a legacy cadet corps program to use a designated space in the Armory for its headquarters pursuant to a separate agreement with ESD. The space allotted by Chapter 659 constitutes a small fraction of the space available to Plaintiff inside the vast Armory. Yet on September 5, 2025, Plaintiff filed this action under 42 U.S.C. § 1983 bringing federal constitutional claims under the Contracts Clause, Takings Clause, as well as Substantive and Procedural Due Process claims. ECF No. 1. Plaintiff also filed an *ex parte* motion for a TRO and preliminary injunction by proposed Order to Show Cause that same day seeking to halt any agreement between

ESD and the Greys, thereby preventing ESD from implementing the Legislature's directive. ECF Nos. 5-8.

The timing of Plaintiff's motion is conspicuous, to say the least. Chapter 659 was signed into law on December 21, 2024. Yet Plaintiff did not bring a constitutional challenge nor immediately seek injunctive relief. On May 1, 2025, ESD certified that the Greys are a "Legacy Cadet Corps Program" pursuant to New York State Military Law § 180-a, as amended by Chapter 659. And yet Plaintiff *still* took no action. On August 20, 2025, the Honorable Jeffrey Zellan rendered a decision in the Civil Court proceeding that entered partial summary judgment against Plaintiff, and determined the Legislature had a valid justification for enacting Chapter 659. Plaintiff swiftly appealed that ruling to the First Department on August 22, 2025. It was just two weeks later, on September 5, that Plaintiff filed the Complaint along with this motion.

Plaintiff's motion should be denied on several grounds based upon this curious sequence of events alone. First, the Court should abstain under *Younger v. Harris*, 401 U.S. 37 (1971) and *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976) while the Civil Court proceeding remains pending. In the alternative, Plaintiff's claims are barred by *res judicata* based upon the August 22, 2025 decision. Plaintiff is also unable to establish any immediate and irreparable harm given the months-long delay in filing this motion.

Even if the Court addresses Plaintiff's motion on the merits, Plaintiff still fails to proffer "substantial proof" establishing its entitlement to the "extraordinary and drastic remedy" of a preliminary injunction. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (cleaned up). With respect to Plaintiff's Contracts Clause claim, the small space allotted to the Greys hardly constitutes a substantial contractual impairment. Moreover, Chapter 659 was intended to preserve the ability of

historical civic institutions like the Greys to operate out of their long-standing locations, which is a legitimate public purpose.

Plaintiff's claim under the Takings Clause is also unlikely to succeed, as Plaintiff's contractual lease with the State does not confer any property interest, while any alleged taking was minimal and enacted for a public use. Plaintiff's Substantive and Procedural Due Process claims similarly lack merit, as the Legislature had a rational basis in enacting Chapter 659 and did not deprive Plaintiff of due process. Moreover, the balance of equities and public interest weigh decisively in Defendant's favor. Accordingly, Plaintiff's motion should be denied.

## <u>BACKGROUND</u>

The City of New York owns in fee simple the parcel of land where the Armory is located. ECF No. 7-1, at 1. The City leased the land to Field Officers of the Seventh Regiment of the National Guard of the State of New York pursuant to leases dated September 22, 1874 and April 23, 1879. *Id.*

The Knickerbocker Greys were founded by Mrs. Augusta Curtis in 1881. *See History of the Knickerbocker Greys*, at http://www.knickerbockergreys.org/about-1.html (last visited September 30, 2025). In 1902, the Greys were invited to drill in the Armory by Colonel Daniel Appleton, the Commanding Officer of the Regiment. *Id.* The Greys' members over the years have included Mayor John Lindsay, Vice President Nelson Rockefeller, and Ambassador Averell Harriman. *Id.* The Greys are a nonprofit charity, with membership open to children ages 6 to 16 in New York City. *Id.* The Greys meet each Tuesday during the school year between 5:15 and 6:30 p.m. in their headquarters at the Armory, and have done so since 1902. *See Knickerbocker Greys Program*, at http://www.knickerbockergreys.org/program-1.html (last visited September 30, 2025).

The Armory had been operated by the New York State Division of Military and Naval Affairs ("DMNA") for military use "as well as cultural, artistic and civic functions." ECF No. 7-1 at 1. ESD issued a Request for Proposals in 2000, acting on behalf of DMNA, seeking a developer to restore, redevelop, and operate the Armory as a nonprofit arts and cultural center "in addition to maintaining military use." *Id.* ESD designated Plaintiff as the developer of the project in 2001. *Id.* at 2. In 2004, the Legislature enacted a new statute, Chapter 482, that amended the Military Law and the New York Urban Development Corporation Act ("UDCA") to govern the lease and operation of the Armory. *Id.*

On November 14, 2006, Plaintiff signed a lease with the State, acting through ESD, with Plaintiff identified as the "Tenant" and the State as the "Landlord." ECF No. 7-1, at 1. Plaintiff subsequently negotiated a series of license agreements for the Greys to remain in the Armory, with Plaintiff representing that the most recent agreement was executed on January 30, 2018, and expiring on January 30, 2019. Rubinstein Decl. Ex. 1, *Seventh Regiment Armory Conservancy Inc. v. Knickerbocker Greys et al.*, LT-300293-23/NY, Holdover Petition, at 8. On December 2, 2022, Plaintiff served upon the Greys a Ten-Day Notice to Quit. *Id.* at 7-9. On January 5, 2023, Plaintiff filed a holdover proceeding in New York County Civil Court, and requested a final judgment awarding Plaintiff "possession of the Premises with the issuance of a warrant to remove [the Greys] from possession of the Premises." *Id.* at 1-3.

On December 21, 2024, Governor Hochul signed into law Chapter 659, which had passed the Assembly and Senate by votes of 145-0 and 59-1 in June 2024. Ex. 2, 2024 N.Y. Laws ch. 659; Ex. 3, Excerpt From Bill Jacket for Chapter 659. The sponsors of Chapter 659 emphasized that "[c]adet corps have a special historical value in the development and expression of New York City's culture and heritage," and that "[j]unior cadet corps…have helped bring discipline,

comradery, and education to countless generations of New York City's youth." Ex. 4, Sponsors' Memoranda for Chapter 659. The sponsors further emphasized that "[p]reserving the ability of cadet corps programs to operate out of their long-standing locations is in the interest of keeping cultural and historical institutions within New York City intact and in their neighborhoods." *Id.*

Chapter 659 further amended the provisions of the Military Law and UDCA that had previously been amended in 2004. In particular, Chapter 659 provides that a recognized "legacy cadet corps program" that "has accessed or used a regimental armory located within a city that has a population of over one million people for over one hundred years" shall execute a "separate agreement" with the State of New York governing its "use" of the Armory. Ex. 2, at §§ 1, 2(e). Chapter 659 also requires that the legacy cadet corps program (along with "associations of veterans") be provided a "proper and convenient room or rooms or other appropriate space in the armory" to hold regular meetings and social events, as well as an allotted space "no less than twelve hundred square feet for their headquarters." *Id.* at §§ 3(i), 4(b). On May 1, 2025, ESD issued a letter to the Greys certifying that they are a "Legacy Cadet Corps Program" under Military Law § 180-a. ECF No. 7-9.

On August 20, 2025, the Honorable Jeffrey S. Zellan issued a Decision and Order in the Civil Court proceeding following the conclusion of discovery. Ex. 5, August 20, 2025 Decision and Order. Judge Zellan determined that Chapter 659 was relevant to the proceeding, and that the statute was consistent with the 2006 Lease. Judge Zellan cited to an exhibit to the Lease requiring Plaintiff to support "interpretive and/or educational programs related to the social aesthetic and military history of the building," and determined that the Greys are an "educational program" and part of the "military history of the building." *Id.* at 5.

In addition, Judge Zellan determined that the waivers in the successive licenses signed by the Greys did not undermine the validity of Chapter 659. *Id.* at 6-8. Finally, Judge Zellan scheduled a trial on the "limited question" of whether the Greys' occupancy of the "present space" in the Armory interferes with Plaintiff's use of the Armory. *Id.* at 8-9. Plaintiff filed a Notice of Appeal with the First Department on August 22, 2025. Ex. 6, Notice of Appeal. On September 5, 2025, two weeks after Judge Zellan issued his decision, Plaintiff filed the instant Complaint and an *ex parte* motion for injunctive relief by proposed Order to Show Cause seeking to prevent Defendant "from enforcing, implementing, maintaining, or giving effect to" Chapter 659. ECF No. 5 at 1.

On September 11, 2025, ESD issued a letter to the Greys designating "suitable spaces" on the second and fifth floors of the Armory for the Greys' headquarters, in accordance with Chapter 659's requirement that the allotted space be "no less than twelve hundred square feet for their headquarters." ECF No. 14-1. The letter further noted that ESD and the Greys would first need to enter an agreement governing the Greys' usage before the Greys can access the spaces. *Id.*

## STANDARD OF REVIEW

"The preliminary injunction is one of the most drastic tools in the arsenal of judicial remedies." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (cleaned up). Accordingly, preliminary injunctive relief is "never awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008); *Sussman v. Crawford*, 488 F.3d 136, 139-40 (2d Cir. 2007) (preliminary injunction "should not be granted unless the movant, by a *clear* showing, carries the burden of persuasion") (emphasis in original). The moving party bears the burden of establishing that (a) it is likely to succeed on the merits; (b) it is likely to suffer irreparable harm in the absence of preliminary relief; (c) the balance of equities tips in its favor; and (d) an injunction is in the public interest. *Winter*, 555 U.S. at 20. Moreover, Plaintiff's motion is subject to a higher burden given

that "statutes and policies implemented through the legislative process are entitled to a higher degree of deference and should not be enjoined lightly." *Goldstein v. Hochul*, 680 F.Supp.3d 370, 388 (S.D.N.Y. 2023) (cleaned up).[1]

## ARGUMENT

## I.    THE COURT SHOULD DENY PLAINTIFF'S MOTION ON ABSTENTION GROUNDS UNDER *YOUNGER* AND *COLORADO RIVER*

As a threshold matter, Plaintiff's motion should be denied on abstention grounds under *Younger v. Harris*, 401 U.S. 37 (1971) and *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976) based upon the pendency of Plaintiff's Civil Court proceeding. *See Wandyful Stadium, Inc. v. Town of Hempstead*, 959 F.Supp. 585, 588 (E.D.N.Y. 1997) (addressing abstention argument before merits of motion for preliminary injunction "because abstention would obviate the need for further analysis").

### A.    *Younger* Abstention

The Supreme Court held in *Younger* that "federal courts should generally refrain from enjoining or otherwise interfering in ongoing state proceedings." *Spargo v. N.Y. State Com'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003). *Younger* abstention "is grounded in principles of comity and federalism and is premised on the belief that a state proceeding provides a sufficient forum for federal constitutional claims." *Schlagler v. Phillips*, 166 F.3d 439, 442 (2d Cir.1999). *Younger* abstention applies in three circumstances: (1) "ongoing state criminal prosecutions"; 2) "certain civil enforcement proceedings"; and (3) "pending civil proceedings involving certain

---

[1] Plaintiff erroneously argues that it must show "either (a) likelihood of success on the merits *or* (b) sufficiently serious questions going to the merits to make them a fair ground for litigation." Memorandum of Law in Support of Plaintiff's *Ex Parte* Motion for a Temporary Restraining Order and Preliminary Injunction ("MOL") at 13; 27-28 (quoting *Vozzolo v. Air Canada*, No. 20 Civ. 3503, 2021 WL 5113387, at *3 (S.D.N.Y. Nov. 3, 2021) (emphasis added)). In fact, the "less rigorous fair-ground-for-litigation standard" does not apply, and Plaintiff must instead satisfy the "heightened requirement" for a motion for preliminary injunction challenging a government action. *Goldstein*, 680 F.Supp.3d at 388 (cleaned up).

orders…uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (cleaned up).

Plaintiff's pending proceeding in Civil Court falls squarely within the third *Sprint* prong. Plaintiff is requesting that a state-court judge issue a warrant to evict the Greys from the Armory. Ex. 1. Yet Plaintiff is also seeking injunctive relief before this Court even while its Civil Court proceeding remains pending. *Younger*, however, bars Plaintiff from "seek[ing] injunctive relief relating to the same property that is the subject matter of the underlying state court action." *Abbatiello v. Wells Fargo Bank, N.A.*, No. 15 Civ. 4210, 2015 WL 5884797, at *4 (E.D.N.Y. Oct. 8, 2015); *Ochei v. Lapes,* No. 19 Civ. 3700, 2020 WL 528705, at *4 (S.D.N.Y. Jan. 31, 2020) (citing *Abbatiello*).

Nor can Plaintiff establish any exception to *Younger* abstention based upon "'bad faith, harassment or any other unusual circumstance that would call for equitable relief.'" *Diamond 'D' Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (quoting *Younger*, 401 U.S. at 54); *Weaver v. N.Y. State Office of Court Admin.*, No. 22 Civ. 559, 2023 WL 2500390, at *7 (N.D.N.Y. Mar. 14, 2023) (*Younger* abstention was warranted "to the extent that state-court real property proceedings are ongoing," and where no exception to *Younger* applies).[2] The Court should deny Plaintiff's motion on the basis of *Younger* abstention.

### B.    *Colorado River* Abstention

The Court should also abstain under *Colorado River* "in view of the pending state proceeding[]" in Civil Court. *Telesco v. Telesco Fuel and Masons' Material, Inc.*, 765 F.2d 356,

---

[2] *Sprint* also alluded to *Middlesex County Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 432 (1982), which held that *Younger* abstention is justified when (1) "there is an ongoing state judicial proceeding"; (2) "the proceedings implicate important state interests"; and (3) "there is an adequate opportunity in the state proceedings to raise constitutional challenges." *Sprint* clarified that these three factors are "not dispositive" and are "additional factors appropriately considered by the federal court before invoking *Younger*." 571 U.S. at 81. The *Middlesex* factors, although not dispositive, likewise favor abstention. *Ochei*, 2020 WL 528705 at *4 (citing *Clark v. Bloomberg*, No. 10 Civ. 1263, 2010 WL 1438803, at *2 (E.D.N.Y. Apr. 12, 2010)).

360 (2d Cir. 1985). *Colorado River* is applicable to parallel proceedings in state court, but it does not require "[c]omplete identity of parties and claims…when the main issue in the case is the subject of already pending litigation." *First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, 862 F.Supp.2d 170, 182 (E.D.N.Y. 2012) (cleaned up). The "main issue" raised by Plaintiff's motion—that Chapter 659 violates Plaintiff's constitutional rights based upon the 2006 Lease—is parallel to Plaintiff's pending Civil Court proceeding seeking to evict the Greys based upon the same 2006 Lease.

> *Colorado River* abstention focuses upon several factors:

> > (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*First Keystone*, 862 F.Supp.2d at 185 (cleaned up). An "additional factor" to be considered under *Colorado River* is "the vexatious or reactive nature of either the federal or the state litigation[.]" *Abe v. New York Univ.*, No. 14 Civ. 9323, 2016 WL 1275661, at *6 (S.D.N.Y. Mar. 30, 2016) (cleaned up). The balance of these factors weighs decisively in favor of abstention.

First, Plaintiff itself is seeking to evict the Greys from its space in the Armory, and jurisdiction has thus been exercised over the disputed property. *See Credit-Based Asset Servicing and Securitization, LLC v. Lichtenfels*, 658 F.Supp.2d 355, 363 (D. Conn. 2009) (*Colorado River* abstention warranted where state court can "determine the rights of the parties with respect to a specific piece of property"). The second factor does not weigh against abstention, as this Court is no less inconvenient than New York County Civil Court.

The third factor, which is "by far the most important factor" under *Colorado River* and the "paramount consideration in this case," weighs heavily in favor of abstention. *Abe*, 2016 WL 1275661 at \*7 (cleaned up). "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Nationwide Gen. Ins. Co. v. Rael Maint. Corp.*, 23 Civ. 4433, 2024 WL 1805544, at \*6 (S.D.N.Y. Apr. 24, 2024) (cleaned up). As noted above, the proceeding in Civil Court is pending trial on Plaintiff's claim that the Greys' continued occupancy interferes with Plaintiff's use of the Armory, and Plaintiff has also appealed Judge Zellan's decision. *Supra* at 6. Accordingly, there is a risk that any determination in state court may conflict with this Court's resolution of Plaintiff's motion. The Court should thus abstain to avoid the potential for inconsistent determinations.

The fourth factor also "weighs strongly in favor of abstention." *Abe*, 2016 WL 1275661 at \*8. Plaintiff's eviction proceeding was filed in January 2023, while Plaintiff and the Greys have subsequently "engaged in extensive motion practice" as well as discovery. *Id.*; Ex. 5 at 3 (noting procedural history). With respect to the fifth factor, this action does involve the application of federal constitutional law. But because New York state courts "possess concurrent jurisdiction over the federal constitutional claims," this factor is "less significant." *Manna v. Greenburgh No. 11 School Dist.*, 2 F.Supp.2d 461, 469 (S.D.N.Y. 1998); *Abe*, 2016 WL 1275661 at \*8 (citing several cases where federal-law claims were subject to *Colorado River* abstention).

The sixth factor also favors abstention, as a host of federal constitutional claims are regularly adjudicated in Civil Court, including Takings Clause claims. *See, e.g., 1245 Stratford, LLC v. Osboume*, 84 Misc.3d 1228(A), at \*8 (Civ. Ct. Bronx Cnty. 2024); *517 West 212 St LLC v. Musik-Ayala*, 2018 WL 2048824, at \*3 (Civ. Ct. N.Y. Cnty. Mar. 16, 2018). It is immaterial that

Plaintiff elected not to fully litigate its federal constitutional claims in Civil Court given that Plaintiff "could have brought the same claims" in that forum. *Abe*, 2016 WL 1275661 at *9.

The "reactive nature" of Plaintiff's motion also counsels in favor abstention. *Telesco*, 765 F.2d at 363. Plaintiff represented in a February 28, 2025 state-court filing that it was "reserv[ing]" its right to bring a constitutional challenge to Chapter 659 "in a separate action." NYSCEF Doc. No. 126, at 3, n.4. Yet Plaintiff did not file the Complaint and this motion until two weeks *after* Judge Zellan's August 20, 2025 decision, which Plaintiff appealed to the First Department just two days later. Ex. 6. It is thus reasonable to conclude that Plaintiff elected to seek injunctive relief in this Court only after it "suffered some failures in the earlier state court action." *Telesco*, 765 F.2d at 363; *Mann v. Alvarez*, No. 96 Civ. 2641, 1996 WL 535540, at *3 (S.D.N.Y. Sept. 20, 1996) (*Colorado River* abstention warranted where plaintiff "suffered an adverse ruling in the state action prior to commencing this action" and appeal in state court remained pending). The Court must not condone such forum-shopping while Plaintiff's parallel proceeding in Civil Court remains pending. Plaintiff's motion should thus be denied under *Colorado River*.

## II.    IN THE ALTERNATIVE, PLAINTIFF'S CONSTITUTIONAL CHALLENGE TO CHAPTER 659 IS BARRED BY *RES JUDICATA*

In the event the Court does not abstain from deciding Plaintiff's motion, the motion should be denied on the basis of *res judicata*. Under New York law, *res judicata* "bars successive litigation based upon the same transaction or series of connected transactions if (1) there is a judgment on the merits rendered by a court of competent jurisdiction, and (2) the party against whom the doctrine is invoked was a party to the previous action." *Stensrud v. Rochester Genesee Regional Transp. Auth.*, 2024 WL 2104604, at *2 (2d Cir. May 10, 2024) (cleaned up); *Ray Legal Consulting Group v. Gray*, 37 F.Supp.3d 689, 701 (S.D.N.Y. 2014) ("literal privity" not required for *res judicata* to apply) (cleaned up). Under New York's transactional standard, a plaintiff is barred from

asserting claims that "were, or could have been, raised in the prior action." *Kern v. Joyce*, 857 F. App'x 691, 692 (2d Cir. 2021) (cleaned up).

As discussed above, Judge Zellan entered partial summary judgment against Plaintiff, finding that Chapter 659 was a valid exercise of legislative authority, and was not inconsistent with the 2006 Lease. *Supra* at 5-6.[3] Plaintiff's constitutional claims in this case and its Civil Court proceeding both arise from the same "transaction" rooted in the 2006 Lease between Plaintiff and the State. The judgment rendered by Judge Zellan thus precludes Plaintiff from arguing before this Court that Chapter 659 is unconstitutional based upon the 2006 Lease. Moreover, "a state court's grant of partial summary judgment constitutes a 'final' judgment for *res judicata* purposes" under New York law. *Pantoja v. Scott*, No. 96 Civ. 8593, 2001 WL 1313358, at *6 (S.D.N.Y. Oct. 26, 2001). Thus, neither the pending trial nor Plaintiff's appeal in the First Department would bar the application of *res judicata*. *Id.* at *6, n.2.

Nor would there be merit to any assertion that *res judicata* does not apply because Plaintiff did not litigate its federal constitutional claims in Civil Court, as these claims "could have been [] raised" in that forum. *Kern*, 857 F.App'x at 692. Indeed, Plaintiff never maintained that the Civil Court lacked jurisdiction to adjudicate Plaintiff's federal constitutional claims, and instead represented that it was "reserv[ing]" its right to challenge the constitutionality of Chapter 659 "in a separate action." *Supra* at 11. But Plaintiff's decision to hold in reserve its constitutional challenge to Chapter 659 cannot forestall the application of *res judicata*.

---

[3] Judge Zellan scheduled a trial on the "limited question" of whether the Greys' occupancy of the "present space" in the Armory interferes with Plaintiff's use of the Armory, and cited to language in § 3 of Chapter 659. Ex. 5 at 8-9. But the resolution of that question at trial would not affect the validity of Chapter 659 itself.

In sum, Plaintiff's motion must still be denied should the Court determine that abstention is unwarranted, as Plaintiff "already had one bite at the apple." *Mahmood v. Research in Motion, Ltd.*, 905 F.Supp.2d 498, 502 (S.D.N.Y. 2012), *aff'd*, 515 F.App'x 891 (2d Cir. 2013).

## III. PLAINTIFF FAILS TO DEMONSTRATE IT IS ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF

### A. Plaintiff is Unable to Establish Irreparable Harm Based Upon its Delay in Seeking Injunctive Relief

Plaintiff's motion makes little effort to establish that it will incur irreparable harm absent preliminary injunctive relief, even though "[a] showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (cleaned up). Plaintiff primarily argues that a "presumption" of irreparable harm ensues from the mere allegation of a constitutional violation (MOL at 13), but that is incorrect. *Goldstein*, 680 F.Supp.3d at 389 ("a mere assertion of a constitutional injury is insufficient to automatically trigger a finding of irreparable harm") (cleaned up).

Plaintiff alternatively maintains that showing a likelihood of success on the merits for any of its claims establishes irreparable harm. MOL at 14. Although Plaintiff is unable to show a likelihood of success on the merits, as discussed in detail below, Plaintiff's months-long delay in seeking preliminary injunctive relief is itself a sufficient basis to deny Plaintiff's motion. *See Silber v. Barbara's Bakery, Inc.*, 950 F.Supp.2d 432, 439-40 (E.D.N.Y. 2013) (citing numerous cases finding no irreparable harm based upon delay in filing preliminary injunction motion). Plaintiff fails to proffer *any* explanation as to why it did not seek such relief when Chapter 659 was signed into law last December, nor when ESD certified the Greys as a "Legacy Cadet Corps Program" on May 1, 2025. *Supra* at 5.

Plaintiff instead claims that "[o]n Friday, September 5, 2025, ESD intends to enter into an agreement with the Greys," citing only to the declaration of Plaintiff's counsel. MOL at 12 (citing ECF No. 7, Hollander Decl., at ¶ 2). But "a declaration from an attorney is not probative support for irreparable harm." *Renew 81 for All by Fowler v. Fed. Highway Admin.*, No. 22 Civ. 1244, 2024 WL 3488407, at *6 (W.D.N.Y. July 19, 2024).[4] Moreover, ESD did not "enter" an agreement with the Greys on September 5, while any move-in date following an agreement between ESD and the Greys would not have occurred until October 15 at the earliest in any case. ECF No. 16. The fact that the Greys are occupying space owned by a third party, and not Plaintiff, further undermines any assertion of irreparable harm.

In sum, Plaintiff's "substantial and inexcusable delay in moving for preliminary relief…erodes its claims of immediate, irreparable, and impending injury," and justifies denial of Plaintiff's motion. *Council for Responsible Nutrition v. James*, No. 24 Civ. 1881, 2024 WL 1700036, at *9 (S.D.N.Y. Apr. 19, 2024).

### B.    Plaintiff is Unable to Establish a Likelihood of Success on the Merits of its Constitutional Claims

#### 1.    Contracts Clause

The Contracts Clause provides that "[n]o State shall…pass any…Law impairing the Obligation of Contracts." U.S. Const. Art. I § 10, cl. 1. But "not all laws affecting pre-existing contracts violate the Clause." *Sveen v. Melin*, 584 U.S. 811, 819 (2018).  Moreover, the "state may not contract away its power to govern in the public interest." *Sullivan v. Nassau Cnty. Interim Finance Auth.*, 959 F.3d 54, 63 (2d Cir. 2000). A Contracts Clause claim is "determined by a three-

---

[4] Plaintiff's motion includes a declaration from its president, Rebecca Robertson, dated September 5, 2025. ECF No. 6. The Robertson declaration also references a purportedly "imminently forthcoming agreement between ESD and the Greys" without proffering any details. *Id.* at 16. Indeed, the declaration merely points to ESD's May 1, 2025 certification of the Greys, from five months before. *Id.* at ¶ 57. The Robertson declaration further undermines any showing of irreparable harm.

part test that asks: (1) whether the contractual impairment is in fact substantial; if so, (2) whether the law serves a significant public purpose, such as remedying a general social or economic problem; and, if such a public purpose is demonstrated, (3) whether the means chosen to accomplish this purpose are reasonable and appropriate." *Sanitation & Recycling Indus., Inc. v. City of N.Y.*, 107 F.3d 985, 993 (2d Cir. 1997).

Plaintiff's claim falters under each step of this analysis.  First, there was no contractual impairment at all because, as Judge Zellan already found, Chapter 659 was consistent with the terms of the 2006 Lease. *Supra* at 5. Plaintiff nevertheless fails to demonstrate that any purported impairment is "substantial." The small space that ESD allotted to the Greys for its headquarters, as set forth in the September 11, 2025 letter, hardly "effects substantial modifications of [the 2006 Lease]." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978). The "[m]inimal alteration" of the 2006 Lease embodied in Chapter 659 is enough to "end the inquiry at its first stage." *Id.* at 245; *Sveen*, 584 U.S. at 819 (Court "may stop after step one" even where challenged "law makes a significant change").

Plaintiff nonetheless maintains that Chapter 659 impairs its "fundamental right to exclude." MOL at 16. Yet Plaintiff errs by citing to *Cedar Point Nursery v. Hassid*, 594 U.S. 139 (2021), which pertained to the Takings Clause, not the Contracts Clause. Plaintiff's assertion that it possesses a contractual "right to exclude" is also contrary to decades of precedent. *Home Bldg. & Loan Ass'n v. Blaisdell*, 298 U.S. 398, 434-35 (1934).

Nor do the litany of grievances in Plaintiff's motion (MOL at 16-17) establish that Plaintiff's contractual rights have been substantially impaired.[5] Indeed, Plaintiff's complaints ring

---

[5] Plaintiff cites to *Exxon Corp. v. Eagerton*, 462 U.S. 176, 192 (1983) for the proposition that legislation whose "sole effect was to alter contractual duties" violates the Contracts Clause. MOL at 17. But *Exxon* cited to *Worthen Co. v. Kavanaugh*, 295 U.S. 56 (1935), where a "statute which drastically limited the remedies available to mortgagees [was] held invalid under the Contract Clause." *Exxon* thus fails to support Plaintiff's argument. The other cases cited by

hollow given that it has shared space in the Armory with the Greys *and* a homeless shelter from the inception of the Lease. ECF No. 7-1, at 12 (defining "Shelter Retained Space"). The Legislature's decision to confer a formal right of "use" to a legacy cadet corps program and to the shelter in Military Law § 180-a (Ex. 2 at § 2(e)) is eminently reasonable, and hardly rises to the level of a "substantial" contractual impairment.

Moreover, Plaintiff fails to establish that any "reasonable expectations under the contract have been disrupted." *Sullivan*, 959 F.3d at 64 (cleaned up); *CFCU Community Credit Union v. Hayward*, 552 F.3d 253, 268 (2d Cir. 2009) (statutory amendment that "*modified* the expectations of the parties" did not "*substantially disrupt* the parties' reasonable expectations") (emphasis added). In particular, Plaintiff is unable to demonstrate that no "legislative action was foreseeable" upon entering the 2006 Lease. *Sullivan*, 959 F.3d at 64. The Lease was *itself* the byproduct of a 2004 legislative enactment, Chapter 482. *Supra* at 4. The Lease also provides that Plaintiff's rights "shall be subject and subordinate in all respects to all future…overriding leases," and mandates Plaintiff's compliance with "any and all applicable present and future, foreseen and unforeseen, laws[.]" ECF No. 7-1, at 57, 80. *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 416 (1983) (no substantial impairment where contractual terms were "subject to relevant present and future state and federal law").[6] It is thus unreasonable for Plaintiff to maintain that it was somehow blindsided by Chapter 659. The Lease itself makes clear that Plaintiff's leasehold remains subordinate to the State's "overriding" interests.

---

Plaintiff either resolved motions to dismiss, or are factually inapposite to this case. MOL at 17-18.

[6] Plaintiff also maintains that "for nearly two decades, the State affirmed the Conservancy's exclusive rights" (MOL at 18), apparently in reference to DMNA's 2006 and 2022 letters to the Greys. ECF Nos. 7-3 and 7-4. But these letters issued by a New York executive agency fail to establish that no legislative action was foreseeable, as Judge Zellan's decision similarly emphasized. Ex. 5 at 8.

Chapter 659 also "serve[s] a legitimate public purpose," *Connecticut State Police Union v. Rovella*, 36 F.4th 54, 58 (2d Cir. 2022) ("*CSPU*"), which is readily apparent from the legislative history. Ex. 4 (emphasizing that "[p]reserving the ability of cadet corps programs to operate out of their long-standing locations is in the interest of keeping cultural and historical institutions within New York City intact and in their neighborhoods"). It is well-settled that "'[s]tates…may enact land-use restrictions or controls to enhance the quality of life by preserving the character and desirable aesthetic features of a city,'" and that "'preserving structures and areas with special historic, architectural or cultural significance is an entirely permissible governmental goal.'" *Bd. of Managers of Soho Int'l Arts Condo. v. City of N.Y.*, No. 01 Civ. 1226, 2004 WL 1982520, at *14 (S.D.N.Y. Sept. 8, 2004) (quoting *Penn Central Transp. Co. v. City of N.Y.*, 438 U.S. 104, 129 (1978)). Chapter 659 likewise reflects an "entirely permissible governmental goal" of ensuring that a legacy cadet corps program like the Greys, which is deeply-rooted in local history and culture, can continue to occupy space in its historical location. *Blaisdell*, 298 U.S. at 436 (public contracts are subject to interests of the "community to which the parties belong") (cleaned up); NYSCEF Doc. No. 66 (Community Board 8 resolution passed on May 25, 2022 urging agreement to allow Greys to remain in Armory).

In order to establish that Chapter 659 was not enacted for a legitimate public purpose, Plaintiff must show that the State was "acting like a private party who reneges to get out of a bad deal." *Sullivan*, 959 F.3d at 65. Plaintiff unsurprisingly fails to make any such showing, as Chapter 659 clearly does not confer any financial benefit upon the State. Plaintiff instead argues at length that Chapter 659 does not advance a public purpose because it "advance[s] the interests of a single private organization," and that the Legislature somehow displayed "arbitrary animus" against Plaintiff and was "driven by political motives favoring the Greys." MOL at 20-21.

Plaintiff's attempt to liken the Greys to a malign "special interest" lobbying the Legislature to enact its selfish agenda is absurd. The Greys are an "*after school program* for children ages 6 to 16 in New York City" that utilize a small space in the Armory to "develop their character, confidence, perseverance, social skills, and problem solving in a fun and unique way[.]" *See About the Knickerbocker Greys*, at http://www.knickerbockergreys.org/about-1.html (last visited September 30, 2025) (emphasis added). Plaintiff's attempt to impugn the Legislature's motives fails to establish that Chapter 659 was not enacted for a public purpose in any case. *CSPU*, 36 F.4th at 64 (rejecting plaintiffs' argument that legislation was motivated by desire to undermine collective bargaining agreement); *Nekrilov v. City of Jersey City*, 45 F.4th 662, 679-80 (3d Cir. 2022) (ordinance curtailing short-term rentals based upon "the desire to protect the residential character of neighborhoods" served a public purpose, and mayor's alleged "personal dissatisfaction with Airbnb" did not factor into analysis).[7]

Finally, the enactment of Chapter 659 was a "reasonable and necessary" means of ensuring that a legacy cadet corps program like the Greys can continue occupying its historical space. *CSPU*, 36 F.4th at 65. Plaintiff bears the burden of establishing that the Legislature "acted self-servingly" for the State's interest to be given "less deference." *Id.* Plaintiff once again fails to make any such showing, and merely opines that the Legislature could have offered the Greys space in "other State-owned facilities." MOL at 22. But it was reasonable for the Legislature to determine that an alternate location was an inadequate substitute for a legacy cadet corps program like the Greys that has maintained a historical home within the Armory. Accordingly, the Court should

---

[7] Plaintiff's citation to the Sponsor's Memorandum of Senator Krueger as evidence of illicit "political motivations" is particularly ironic, as Plaintiff's president represented to Senator Krueger herself in a 2006 discussion that Plaintiff viewed the Greys as an "integral part of the tradition and future of the Armory." Ex. 5 at 2; NYSCEF Doc. No. 120, at 293:12-14 (Plaintiff's president testifying that Greys were given space in the Armory because they "were a worthwhile organization").

"presume that [Chapter 659] is valid and done in the public interest," and "defer to the State's assessment of the reasonableness and necessity of" the statute. *Id*. at 66-67.

### 2. Takings Clause

The Takings Clause of the Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." *Cmty. Hous. Improvement Program v. City of N.Y.*, 59 F.4th 540, 550 (2d Cir. 2023) ("*CHIP*") (quoting U.S. Const. amend. V). The Supreme Court has recognized two types of takings: a physical taking is "a direct government appropriation or physical invasion of private property," while a regulatory taking occurs when a "state regulation goes too far and in essence effects a taking." *Elmsford Apartment Assoc., LLC v. Cuomo*, 469 F.Supp.3d 148, 162 (S.D.N.Y. 2020), *appeal dismissed sub. nom.*, *36 Apartment Assoc., LLC v. Cuomo*, 860 F.App'x 215 (2d Cir. 2021). Plaintiff appears to assert that Chapter 659 constitutes a physical taking. MOL at 3, 22-24.

Yet Plaintiff's Takings Clause claim is subject to two threshold deficiencies. First, it is barred by Eleventh Amendment immunity.[8] *See 74 Pinehurst LLC v. New York*, 59 F.4th 557, 570 (2d Cir. 2023). Plaintiff asserts, on the one hand, that "no amount of compensation" can authorize Chapter 659, yet Plaintiff *also* asserts that it is entitled to "just compensation" if the Court determines that any taking was for a public use. MOL at 22-23. Thus, Eleventh Amendment immunity bars Plaintiff's "claims against Commissioner [Knight] to the extent [Plaintiff seeks] monetary relief." *74 Pinehurst*, 59 F.4th at 570.

---

[8] Plaintiff does not dispute that ESD is acting as an arm of the State in this case. The Complaint names Hope Knight in her official capacity and invokes the *Ex parte Young*, 209 U.S. 123 (1908) exception to Eleventh Amendment immunity. ECF No. 1, at ¶ 26; *Ewers v. Empire State Recovery Fund*, No. 19 Civ. 4599, 2019 WL 13498513, at *3 (S.D.N.Y. July 8, 2019) (ESD "enjoys Eleventh Amendment immunity from suit in federal court").

Second, Plaintiff simply presumes that it possesses a "protectable property interest" under the 2006 Lease, but that is not so. *Buffalo Teachers Fed'n v. Tobe*, 464 F.3d 362, 374 (2d Cir. 2006). Plaintiff does not possess title to the Armory, and fails to even articulate how the State could "take" a portion of the Armory when the State is itself the landlord.[9] Plaintiff's landlord-tenant relationship with the State, pursuant to the 2006 Lease, cannot give rise to a Takings Clause claim. *Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211, 224 (1986) (regulation affecting "existing contract rights" does not "transform the regulation into an illegal taking" where the government "has taken nothing for its own use"); *CHIP*, 59 F.4th at 553 (emphasizing the "State's longstanding authority to regulate" landlord-tenant relationship in rejecting physical takings claim). Any "protectable" interest under the Lease sounds in contract, not property. *TM Park Ave. Associates v. Pataki*, 214 F. 3d 344, 350 (2d Cir. 2000); *Plymouth Mills, Inc. v. FDC*, 876 F.Supp. 439, 445 (E.D.N.Y. 1995). As detailed above, Plaintiff's contract-based claim against the State is meritless.

Even if Plaintiff could surmount these deficiencies, Plaintiff is still unable to demonstrate a likelihood of success on the merits of its Takings Clause claim. The Second Circuit has held that "[m]inor physical intrusions are not physical takings" where the intrusion "displaces only a few sticks in the bundle of rights that constitute ownership." *Southview Associates, Ltd. v. Bongartz*, 980 F.2d 84, 95 (2d Cir. 1992). Although Defendant does not concede that Plaintiff possesses any property-based "bundle of rights," the space ESD recently allotted to the Greys inside the vast Armory constitutes a "minor physical intrusion" at most.

---

[9] Plaintiff argues, in the context of its Due Process claim, that a "leasehold interest" is a "protected property interest." MOL at 24. But the case Plaintiff cites, *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 397 (2d Cir. 2005), involved a private insurance dispute, and did not implicate any federal constitutional claim.

Moreover, any "taking" effectuated by Chapter 659 was for a public use.[10] The Second Circuit has cautioned that the court's role in determining "what constitutes a public use" is "an extremely narrow one." *Goldstein v. Pataki*, 516 F.3d 50, 57 (2d Cir. 2008) (cleaned up). As discussed above, Chapter 659 bears a "rational relationship" to the Legislature's legitimate interest in "keeping cultural and historical institutions within New York City intact and in their neighborhoods." *Supra* at 4-5; *Goldstein*, 516 F.3d at 58. It is also puzzling that Plaintiff cites *Goldstein* in support, as *Goldstein* significantly undermines Plaintiff's core argument. *Id.* at 63-64 (rejecting plaintiff's argument that ESD-approved project was not for public use because it was allegedly "motivated by a desire to confer a private benefit" upon a real estate developer, while "the mere fact that a private party stands to benefit from a proposed taking does not suggest its purpose is invalid"). Plaintiff thus fails to show any entitlement to injunctive relief under the Takings Clause.[11]

### 3.    Substantive and Procedural Due Process Claims

Plaintiff claims that Chapter 659 violates both its Substantive and Procedural Due Process rights. MOL at 24-25. The threshold issue for both claims is whether Plaintiff possesses a property interest. *DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124, 132 (2d Cir. 1998) (Substantive Due Process); *Elmsford*, 469 F.Supp.3d at 172 (Procedural Due Process). Plaintiff's

---

[10] Defendant addresses Plaintiff's argument that Chapter 659 was not enacted for a public use but, as noted above, the Eleventh Amendment precludes Plaintiff from seeking compensation should the Court agree with Defendant. NYSCEF Doc. No. 120, at 200:15-24 (Plaintiff's president testifying that market value of Armory "basically is zero").

[11] Plaintiff does not expressly argue that Chapter 659 constitutes a regulatory taking, and it would be improper for Plaintiff to belatedly raise this argument in reply. But Chapter 659 passes muster under the *Penn Central* analysis governing non-categorical regulatory takings in any case. *See, e.g., St. Bartholomew's Church v. City of N.Y.*, 914 F.2d 348, 356 (2d Cir. 1990) (application of Landmarks Law that prohibited church from constructing office tower "does not effect an unconstitutional taking because the Church can continue its existing charitable and religious activities in its current facilities").

contractual relationship with the State confers no such property interest, while the *Duane Reade* decision is clearly inapposite. *Supra* at 19-20.

Moreover, the Second Circuit has held that "the Due Process Clause cannot do the work of the Takings Clause," which "provides an explicit textual source of constitutional protection." *CHIP*, 59 F.4th at 556 (cleaned up); *Elmsford*, 469 F.Supp.3d at 173 (plaintiffs' failure to identify "a property interest independent of the interests addressed by their other constitutional claims" was "fatal to their due process claim"); *Johnson v. Murphy*, 527 F.Supp.3d 703, 719 (D.N.J. 2021), *appeal dismissed*, 2022 WL 767035 (3d Cir. Mar. 14, 2022) (dismissing Due Process claim involving "same interest addressed by the Contracts Clause"). Plaintiff is thus barred from proceeding with its duplicative Due Process claims.

Plaintiff is unable to establish a likelihood of success on the merits in any case. With respect to the Substantive Due Process claim, Plaintiff does not argue that Chapter 659 "interferes with a fundamental right" or "singles out a suspect classification." *Glidedowan, LLC v. N.Y. State Dep't of Health*, 768 F.Supp.3d 503, 521 (W.D.N.Y. 2025) (cleaned up). Plaintiff thus bears the burden to "demonstrate that there is no rational relationship between [Chapter 659] and a legitimate legislative purpose." *Id.*; *74 Pinehurst*, 59 F.4th at 569 (rational basis test is "typically easy to satisfy"). The Legislature did advance a legitimate purpose in enacting Chapter 659, as detailed above, and Plaintiff falls well short of demonstrating that Chapter 659 lacks any rational basis.

Plaintiff instead asserts that its Substantive Due Process rights were violated because Chapter 659 was "motivated by retaliatory animus" based upon Plaintiff's decision to not renew the Greys' license, citing to Senator Krueger's Sponsor's Memorandum from 2023. MOL at 24. But the Second Circuit has rejected similar arguments concerning impermissible legislative motive even where fundamental rights were at stake. *See Miller v. McDonald*, 130 F.4th 258, 266-67 (2d

Cir. 2025).[12] Plaintiff's complaint that it was excluded from participating in the process governing the Greys' use of the Armory (MOL at 25) hardly demonstrates that the Legislature acted in a wholly "arbitrary and irrational" manner either.

Nor can Plaintiff establish a likelihood of success on its Procedural Due Process claim. Plaintiff asserts that Chapter 659 was an "adjudicatory act" and "not a general legislative enactment" because it "resolve[d] a specific factual dispute between two parties" without providing Plaintiff the requisite due process. MOL at 26. But the Second Circuit has squarely held that, "as to the legislative aspects" of a particular decision to take property, "the legislative process is all the process that is due." *Brody v. Village of Port Chester*, 434 F.3d 121, 133 (2d Cir. 2005). So too in this case, the legislative process that preceded Chapter 659's enactment fully satisfied Plaintiff's procedural Due Process rights. *Chunn v. v. Amtrak*, 916 F. 3d 204, 207 (2d Cir. 2019) (pre-deprivation hearing not required to address property claim where post-deprivation procedures were available).

## C.    The Balance of Equities and Public Interest Favor Defendant

Finally, Plaintiff must "demonstrate that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Goldstein*, 680 F.Supp.3d at 402 (cleaned up). Because the State is the opposing party, the two factors merge. *Id*. As detailed above, Plaintiff waited several months after Chapter 659 was enacted, and after ESD certified the Greys as a legacy cadet corps program on May 1. *Supra* at 13-14. Plaintiff's suggestion that a preliminary injunction would simply maintain the status quo (MOL at 28) is thus incorrect given the steps ESD has taken to implement Chapter 659 over the past several months. ECF Nos. 7-9, 14-1.

---

[12] Plaintiff cites to *Scott v. Greenville County*, 716 F.2d 1409, 1419 (4th Cir. 1983), but the government animus directed against the plaintiff in *Scott* is clearly inapposite to this case given that the Legislature had a rational basis for enacting Chapter 659.

Moreover, Plaintiff is seeking to enjoin ESD from allotting a small "suitable space" to the Greys (ECF No. 14-1), even though Plaintiff retains a vast amount of square footage for its own use. Plaintiff is thus attempting to prevent ESD from implementing the Legislature's directive to allow a civic organization to continue operating in a space it has utilized for well over a century. The Court should reject Plaintiff's attempt to short-circuit this ongoing process, which injures not only ESD but the State as a whole. *See Maryland v. King*, 567 U.S. 1301, *3 (2012) (Roberts, C.J., in chambers) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.") (cleaned up).

## IV.    THE GREYS SHOULD BE JOINED AS A NECESSARY PARTY

As detailed in Point I, this lawsuit is effectively an end-run around Plaintiff's pending eviction proceeding against the Greys, and the Court should abstain from resolving Plaintiff's motion on that basis. But should the Court decide that abstention is unwarranted, and that Plaintiff is entitled to preliminary injunctive relief, the Greys should be joined as a necessary party under Rule 19(a). Because "no court may lawfully enjoin the world at large," *Whole Women's Health v. Jackson*, 595 U.S. 30, 44 (2021) (cleaned up), an injunction running solely against Defendant would not provide "complete relief." Fed. R. Civ. P. 19(a)(1)(A). Moreover, the Greys have "an interest relating to the subject of the action," and their absence from this lawsuit would impair their "ability to protect [their] interest" in avoiding eviction. Fed. R. Civ. P. 19(a)(1)(B)(i) and (ii).

The Second Circuit has held that joinder of third parties under Rule 19 is particularly justified in cases involving competing claims over property. *See Kulawy v. U.S.*, 917 F.2d 729, 736 (2d Cir.1990); *Brody v. Village of Port Chester*, 345 F.3d 103, 118-20 (2d Cir. 2003) (Sotomayor, J.); *see also MasterCard Int'l, Inc. v. Visa Int'l Serv. Ass'n.*, 471 F.3d 377, 387 (2d Cir. 2006).

Because Plaintiff and the Greys remain locked in a property dispute that is intertwined with this lawsuit and Plaintiff's motion, the Greys should thus be joined as a party.

## **CONCLUSION**

For the reasons set forth above, Defendant respectfully requests that the Court deny Plaintiff's motion, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
      September 30, 2025

                                     Respectfully submitted,
                                     LETITIA JAMES
                                     Attorney General
                                     State of New York
                                     By:
                                               /s/
                                      _____
                                     Yuval Rubinstein
                                     Special Litigation Counsel
                                     28 Liberty Street
                                     New York, New York 10005
                                     (212) 416-8673
                                     yuval.rubinstein@ag.ny.gov

## <u>CERTIFICATION</u>

In accordance with Rule 7.1(c) of the Local Rules of the Southern and Eastern Districts of New York, I hereby certify that Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction contains 8,123 words, exclusive of the caption, table of contents, table of authorities, and signature block, as established using the word count function of Microsoft Word.

                                            /s/
                                        Yuval Rubinstein