UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
SEVENTH REGIMENT ARMORY
CONSERVANCY, INC.,

                Plaintiff,

                -against-

HOPE KNIGHT, in her official capacity as
President, Chief Executive Officer, and
Commissioner of Empire State Development
Corporation,

                Defendant.
---------------------------------------------------------------X

Case No. 12-CV-07373-GBD

# REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

LOEB & LOEB LLP
345 Park Avenue
New York, New York 10154
(212) 407-4000

*Attorneys for Plaintiff*
*Seventh Regiment Armory Conservancy, Inc.*

...

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................ 1

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

    I.   THERE IS NO BASIS FOR THE COURT TO ABSTAIN ............................................. 3

        A.   Younger Abstention Does Not Apply .................................................................... 3

        B.   Colorado River Abstention Does Not Apply ........................................................ 4

    II.   RES JUDICATA DOES NOT APPLY ........................................................................... 5

    III.   PLAINTIFF WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION .... 6

    IV.   PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS .......................................... 6

        A.   Contracts Clause .................................................................................................... 6

            i.   Substantial Impairment ............................................................................... 6

            ii.   There is No Public Purpose ........................................................................ 9

            iii   Less Restrictive Means Exist ................................................................... 10

        B.   Takings Clause .................................................................................................... 10

        C.   Substantive Due Process ..................................................................................... 11

        D.   Procedural Due Process ...................................................................................... 11

    V.   THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST
          OVERWHELMINGLY FAVOR THE CONSERVANCY ........................................... 11

    VI.   THE GREYS ARE NOT A NECESSARY PARTY ...................................................... 12

CONCLUSION ............................................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.H. v. French*,
 985 F.3d 165 (2d Cir. 2021)......................................................................................................12

*Cavanaugh v. Geballe*,
 28 F.4th 428 (2d Cir. 2022) ........................................................................................................4

*Cayuga Nation v. Tanner*,
 6 F.4th 361 (2d Cir. 2021) .........................................................................................................5

*Cedar Point Nursery v. Hassid*,
 594 U.S. 139 (2021)....................................................................................................................6

*Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.*,
 598 F.3d 30 (2d Cir. 2010).......................................................................................................11

*Cmty. Hous. Improvement Program v. City of N.Y.*,
 59 F.4th 540 (2d Cir. 2023) ......................................................................................................10

*In re Comverse Tech., Inc.*,
 2006 U.S. Dist. LEXIS 80195 (E.D.N.Y. Nov. 3, 2006)............................................................4

*Conn. State Police Union v. Rovella*,
 36 F.4th 54 (2d Cir. 2022) .........................................................................................................9

*Connolly v. Pension Benefit Guar. Corp.*,
 475 U.S. 211 (1986)..................................................................................................................10

*County of Sacramento v. Lewis*,
 523 U.S. 833 (1998)..................................................................................................................11

*Dittmer v. Cnty. of Suffolk*,
 146 F.3d 113 (2d Cir. 1998)...................................................................................................4, 5

*Donohue v. Cuomo*,
 980 F.3d 53 (2d Cir. 2020).........................................................................................................8

*Fuentes v. Shevin*,
 407 U.S. 67 (1972)....................................................................................................................11

*Home Bldg. & Loan Ass'n v. Blaisdell*,
 290 U.S. 398 (1934)....................................................................................................................9

*Jolly v. Coughlin*,
 76 F.3d 468 (2d Cir. 1996)......................................................................................6, 11

*Juidice v. Vail*,
 430 U.S. 327 (1977)......................................................................................................4

*Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*,
 400 F.3d 139 (2d Cir. 2005)........................................................................................6

*Maharaj v. BankAmerica Corp.*,
 128 F.3d 94 (2d Cir. 1997)..........................................................................................5

*Marchi v. Bd. of Coop. Educ. Servs.*,
 173 F.3d 469 (2d Cir. 1999)........................................................................................6

*Mathews v. Eldridge*,
 424 U.S. 319 (1976)....................................................................................................11

*Nassau & Suffolk Cnty Taxi Owners Ass'n v. New York*,
 336 F. Supp. 3d 50 (E.D.N.Y. 2018) ........................................................................12

*Pennzoil Co. v. Texaco, Inc.*,
 481 U.S. 1 (1987)..........................................................................................................4

*Sprint Commc'ns, Inc. v. Jacobs*,
 571 U.S. 69 (2013)........................................................................................................3

*Telesco v. Telesco Fuel & Masons' Materials, Inc.*,
 765 F.2d 356 (2d Cir. 1985)........................................................................................5

*U.S. Tr. Co. v. N.J.*,
 431 U.S. 1 (1977)....................................................................................................8, 10

*U.S. v. Petty Motor Co.*,
 327 U.S. 372 (1946)....................................................................................................10

Plaintiff respectfully submits this reply in support of its Motion for a Temporary Restraining Order and Preliminary Injunction (ECF 5-8) (the "Motion").[1]

## PRELIMINARY STATEMENT

Plaintiff filed the Motion on September 5, 2025, after learning that ESD intended to imminently execute an agreement granting the Greys permanent occupancy rights in Plaintiff's Demised Premises. The challenged Amendments compelling the transfer of a portion of Plaintiff's Demised Premises to the Greys are unconstitutional: they substantially impair Plaintiff's 99-year Lease and Non-Disturbance Agreement, effect a taking for private use and private purpose, and violate both substantive and procedural due process.

The Amendments enacted in December 2024 attempt to give a portion of Plaintiff's legally Demised Premises to the Greys. Since the Amendments were passed, Plaintiff has attempted in good-faith to resolve the dispute by providing ESD proposals to give space to the Greys that would permit them to remain in the Armory and engage in the exact activities they had been carrying out. Plaintiff's proposals were never responded to. Instead, in May 2025, ESD informed Plaintiff that the Greys were being designated as a "legacy-cadet-corps program" under the Amendments. The next step was for ESD to designate the space that would be given to the Greys, followed by "a separate agreement" to govern the Greys' use and occupancy.

At that time, it was unclear what space ESD would designate. Either ESD would designate space from Plaintiff's Demised Premises—which ESD is not permitted to do and thus the subject of this action—or ESD would designate space from the DMNA Retained Space, which ESD is permitted to do since the State retains the property interest in that space. Despite repeated inquiries, Plaintiff was kept in the dark regarding the space ESD would designate,

---

[1] Undefined capitalized terms shall have the same meaning as ascribed in the Motion.

preventing it from seeking judicial relief because the dispute was not yet ripe. It was not until the first week of September 2025 that ESD confirmed it was designating a portion of Plaintiff's Demised Premises, thus making the constitutional challenge to the Amendments ripe. Plaintiff commenced this action on September 5 and filed the Motion.

Since then, ESD has taken affirmative steps in furtherance of finalizing an agreement for the Greys' use of the Demised Premises, exactly what Plaintiff seeks to enjoin. ESD's decision to accelerate implementation of the Amendments while the Motion is pending is concerning. Worse is the space that ESD designated for the Greys' permanent use: two rooms in the Armory (totaling 3,325 square feet), *i.e.*, Room K on the second floor and the fifth-floor rehearsal space (the "Rehearsal Room"). The substantial negative impact to Plaintiff of losing Room K and the Rehearsal Room cannot be overstated. As four witnesses describe,[2] granting the Greys permanent use of Room K and the Rehearsal Room would have devastating and irreparable consequences.

In opposition, ESD asserts baseless procedural arguments for why the Motion should be denied. ESD is wrong that this action is precluded by the Holdover Proceeding commenced on January 5, 2023, nearly two years *prior* to the Amendments being enacted. The only requested relief sought in the Holdover Proceeding is to remove the Greys from their 691 square feet of storage space because, as confirmed by DMNA, the Greys have "no leasehold, occupancy or other agreement of any kind at the Armory." (ECF 7, Ex. D.) The Holdover Proceeding remains pending after the State court denied the parties' respective cross-motions for summary judgment.

---

[2] Filed herewith are: Supplemental Declaration of Rebecca Robertson ("Robertson Sup. Decl."); Declaration of Cassidy Jones ("Jones Decl."); Declaration of Michael Lonergan ("Lonergan Decl."); and Declaration of Branden Jacobs-Jenkins ("Jacobs-Jenkins Decl."). When the Motion was filed, ESD had not designated Room K or the Rehearsal Room. These declarations address this new issue, which could not have been raised in the Motion's opening papers.

2

The gravamen of the Greys' failed summary judgment motion was that the Holdover Proceeding should be dismissed as a result of the Amendments challenged in this action. The State court rejected that argument, correctly holding that the Amendments are "not before [it]." Any mention of the Amendments in the summary judgment decision is pure dicta and has no binding or preclusive effect.

ESD's arguments hinge on its incorrect assertion that Plaintiff's 99-year Lease with ESD does not confer a constitutionally protected property interest. The law is clear: a leasehold is a recognized property interest protected by the Constitution. ESD claims it only designated a "small space" that "hardly constitutes a substantial contractual impairment" without *any* discussion of Room K, the Rehearsal Room, or their integral nature and importance to the Armory's artistic and educational programming and operations. ESD also concedes that the Amendments were enacted for the sole benefit of the Greys (a private party), which do not address any social, health, economic, or other legitimate public issue.

ESD provides no basis to deny the Motion. In contrast, Plaintiff will face irreparable harm if the Greys are granted permanent, exclusive use of Room K and the Rehearsal Room. Maintaining the *status quo* during the pendency of this action will not prejudice ESD whatsoever; it will simply preserve the parties' existing obligations under the Lease and Non-Disturbance Agreement until this action is fully adjudicated. The equities and public interest weigh decisively in favor of granting an injunction.

## ARGUMENT

**I.    THERE IS NO BASIS FOR THE COURT TO ABSTAIN**

    **A.    Younger Abstention Does Not Apply**

A Federal court may abstain from deciding a case in deference to the States only under "exceptional circumstances." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72, 78 (2013). ESD

3

contends the State Holdover Proceeding falls within one such "exceptional" category set forth in *Younger*: "pending civil proceedings involving certain orders … uniquely in furtherance of the state's courts' ability to perform their judicial functions." (Opp. 7, 8.)  This category, however, refers narrowly to "core state court civil administrative processes, powers, and functions that allow the state courts to adjudicate the matters before them and enforce their judgments," or, in other words, "challenges to the processes by which the State compels compliance with the judgments of its courts."  *Cavanaugh v. Geballe*, 28 F.4th 428, 434 (2d Cir. 2022); *see also Juidice v. Vail*, 430 U.S. 327, 335 (1977) (abstaining where state's contempt process at issue); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13 (1987) (abstaining where state court's enforcement of its own orders and judgments at issue).

Here, neither party challenges the State court's authority to enforce its orders or judgments, nor does this case affect its administrative processes.  Nor does Plaintiff ask this Court to restrain the State court.  *Younger* abstention is simply inapplicable.

      **B.**    **Colorado River Abstention Does Not Apply**

A necessary prerequisite to abstention under *Colorado River* is a finding that the concurrent proceedings are in fact "parallel," *i.e.*, "when substantially the same parties are contemporaneously litigating substantially the same issue in another forum," *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998), or "there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *In re Comverse Tech., Inc.*, 2006 U.S. Dist. LEXIS 80195, at *6 (E.D.N.Y. Nov. 3, 2006).  "Any doubt regarding the parallel nature of a federal and state action should be resolved in favor of the exercise of federal jurisdiction."  *Id.*

     ESD acknowledges that the two actions are entirely different:  the Holdover Proceeding is about an eviction of the Greys' storage space (which is separate from Room K and the

4

Rehearsal Room), while this case is about the constitutionality of the Amendments. (Opp. 9.) The relief sought is substantially different too: eviction under the Lease versus an injunction against enforcement of the Amendments. *See Dittmer*, 146 F.3d at 118 (declining to abstain). Whether or not the Greys are evicted in the Holdover Proceeding has no bearing on the disposal of the Federal claims in this action. Because this threshold issue for *Colorado River* abstention (*i.e.*, "parallel" cases) is not met,[3] the other abstention factors are inapplicable.

## II. RES JUDICATA DOES NOT APPLY

"[T]he doctrine of res judicata, or claim preclusion, provides that [a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Maharaj v. BankAmerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997). As an initial matter, claim preclusion does not apply here because there has been no final judgment on the merits in the Holdover Proceeding. Moreover, the Federal claims in this action did not exist, and could not have been asserted, in the earlier Holdover Proceeding, which commenced on January 5, 2023, nearly two years before the Amendments were enacted on December 21, 2024. *See Cayuga Nation v. Tanner*, 6 F.4th 361, 376 (2d Cir. 2021).

The only question before the State court is whether the Greys have any right to remain in possession of a portion of the Armory after the expiration of a temporary, revocable license. *See* ECF 24-1. By contrast, this action challenges the constitutionality of the Amendments under the Constitution, which arise from legislative action that did not yet exist when the Holdover Proceeding was filed and depends on a new and distinct set of operative facts. Claim production

---

[3] ESD's cases clarify what constitutes a true "parallel proceeding." *See Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 362 (2d Cir. 1985) (finding actions parallel where "the federal and state actions are essentially the same … the same cause of action, regardless of theory or pleadings, is asserted in both courts … and seeks the same relief").

therefore does not apply. *See Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 400 F.3d 139, 141 (2d Cir. 2005).

### III. PLAINTIFF WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION

Plaintiff has satisfied the irreparable harm requirement because there is a "presumption of irreparable injury that flows from a violation of constitutional rights." *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996). ESD argues there is no irreparable harm because Plaintiff waited until September 5 to file the Motion. That is nonsensical. Plaintiff could not have filed the Motion any sooner because the as-applied constitutional challenges to the Amendments were not ripe until ESD confirmed that it was designating a portion of Plaintiff's Demised Premises, which was not until the first week of September 2025. *See Marchi v. Bd. of Coop. Educ. Servs.*, 173 F.3d 469, 478 (2d Cir. 1999) ("Ripeness requires a substantial controversy … of sufficient immediacy and reality to justify judicial resolution."). Indeed, ESD's formal designation of Room K and the Rehearsal Room was not until September 11, *after* Plaintiff filed the Motion, evidencing that when Plaintiff filed the Motion days earlier, the designation was in fact imminent, as ESD had advised Plaintiff the week prior. (*See* ECF 14-1.)

### IV. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS

#### A. Contracts Clause

##### i. *Substantial Impairment*

ESD incredulously contends there will be no substantial impairment to Plaintiff's protected rights under the Lease and Non-Disturbance Agreement. (Opp. 15-16.) As to the law, ESD is wrong that Plaintiff's leasehold interest lacks the fundamental right to exclude. (*Id.*) The Supreme Court has held that "the right to exclude is universally held to be a fundamental element of the property right." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 150 (2021).

6

As to the facts, ESD omits *any* mention of Room K or the Rehearsal Room. Instead, ESD brushes the issue aside by merely claiming they constitute a "small space." (Opp. 15.) In reality, granting the Greys permanent use of Room K and the Rehearsal Room would have irreparable consequences to Plaintiff.

*First*, loss of the Rehearsal Room would significantly disrupt the Armory's artistic programming and operations. The loss of the Rehearsal Room would compel Plaintiff to relocate rehearsals off-site, incurring hundreds of thousands of dollars in additional expenses for studio rentals, transportation, and labor. (Robertson Supp. Decl. ¶¶9-13; Lonergan Decl. ¶¶6-30.) More importantly, such displacement would severely hinder the artists' work efficiency and the production of immersive, site-specific works designed for the Drill Hall that define the Armory's artistic mission. (Lonergan Decl. ¶¶8-9; Jacob-Jenkins Decl. ¶¶3-8.) Productions depend on the Rehearsal Room for on-site development, technical coordination, and daily warm-ups. (Lonergan Decl. ¶¶8-9.) Without it, these productions would face delays, increased costs, and artistic compromises, and some could be canceled entirely. (*Id.*; Robertson Supp. Decl. ¶10.)

*Second*, the operational strain would also harm Plaintiff's education and community engagement programs for thousands of students from underserved NYC public schools, which are integrated with rehearsal activities. Plaintiff's arts education program depends on access to rehearsals for substantial student observation and artist interaction. (Jones Decl. ¶¶4-13.) Off-site relocation would diminish the value of these experiences and reduce student participation. (*Id.*)

*Third*, granting the Greys exclusive use of Room K will breach existing third-party contracts, including Plaintiff's existing, binding contract with The European Fine Art Foundation

7

("TEFAF"), which hosts TEFAF New York, a world-renowned art fair showcasing millions of dollars of fine art and jewelry annually at the Armory. (Robertson Supp. Decl. ¶5.) Each spring, TEFAF is granted exclusive use of the Armory's first floor, including the Drill Hall, and the second floor, including Room K, and the adjacent corridors, for exhibition, storage, and security operations. (*Id.* ¶¶6-7.) Granting any third party, including the Greys, access to Room K or the surrounding corridor during the yearly art fair would violate the parties' contract. (*Id.* ¶7.)

ESD's only response is that losing Room K and the Rehearsal Room was somehow "foreseeable upon entering the 2006 Lease" by cherry picking boilerplate provisions of the Lease[4] to assert that Plaintiff had no "reasonable expectations" thereunder. (Opp. 16.) That is false. There is nothing in the Lease that suggests the State would remove parts of the Demised Premises.

The inquiry is not whether the bare possibility of legislative action could ever have been "foreseen" but rather whether the Amendments substantially impair Plaintiff's reasonable expectations under the lease. *See Donohue v. Cuomo*, 980 F.3d 53, 81 (2d Cir. 2020). They clearly do. The fact that the Lease arose from enabling legislation does not mean the Legislature retained carte blanche to rewrite it. *See U.S. Tr. Co. v. N.J.*, 431 U.S. 1, 28 (1977) (repeal of bondholder covenant originally created by statute prohibited under Contract Clause). At bottom, ESD fails to adequately contend with binding authority holding that laws whose "sole effect was to alter contractual duties" are void. (Mot. at 18.)[5]

---

[4] For example, ESD mischaracterizes Section 14.01 of the Lease, which is a compliance clause (not a surrender of leasehold rights), and Section 30.02, which is a *protective* provision meant to prevent the very action taken by the legislature.

[5] ESD's cases (Opp. 16) strengthen Plaintiff's position because they show that "foreseeability" comes only from longstanding, consistent regulation throughout an industry, which is not the case here.

### ii. There is No Public Purpose

ESD fails to address *any* of the cases cited by Plaintiff for the proposition that laws benefiting particular individuals or narrow classes fail the public purpose requirement of the Contract Clause, *see* Mot. at 19-20. ESD does not dispute that the Amendments were solely passed to "provide the Knickerbocker Greys permanent space at and use of the Seventh Regiment Armory." (Mot. at 19-20.)

Instead, ESD manufactures a public purpose by claiming the Amendments constitute a "land-use restriction[] or control[]" and reflect the legislature's attempt at "preserving structures and areas with special historic, architectural or cultural significance" (Opp. 17.) ESD's cases acknowledge that laws passing the public purpose test "have in common that they were passed in the service of a broad societal goal, not the pursuit of the interests of a narrow class." *Conn. State Police Union v. Rovella*, 36 F.4th 54, 63 (2d Cir. 2022).[6] Had the State wanted the Greys to remain part of the Armory's historic preservation, it would have given them a retained space as it did for the DMNA and Shelter.

ESD next claims that public contracts remain subject to the interests of the "community to which the parties belong." (Opp. 17 (quoting *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 436 (1934).) But *Blaisdell* upheld a temporary, conditional measure (the Mortgage Moratorium Law), amid a bona fide economic emergency to serve a broad public need. The Court specifically noted that "the legislation was not for the mere advantage of particular individuals but for the protection of a basic interest of society." *Blaisdell*, 290 US at 445.

---

[6] ESD's other cited cases (Opp. 18) are easily distinguishable because the laws at issue clearly benefited society or the public at large without solely benefiting a single, private organization.

9

Courts have repeatedly rejected efforts to relabel narrow carve-outs as public-interest laws when the effect is to benefit a single, identifiable entity, as is the case here. (*See* Mot. at 20.)

        *iii.*       *Less Restrictive Means Exist*

ESD does not deny that alternative spaces exist for the Greys, but contends it was "reasonable for the Legislature to determine that an alternate location was an inadequate substitute." As a factual matter, adequate substitutes do exist; as a legal matter, complete deference to the State's self-interest is unwarranted. *See U.S. Tr. Co.,* 431 U.S. at 26 ("[C]omplete deference to a legislative assessment of reasonableness and necessity is not appropriate because the State's self-interest is at stake.").

    **B.**    **Takings Clause**

Contrary to ESD's assertion, Plaintiff's claim is not a demand for compensation, but a request under *Ex parte Young* to enjoin an unconstitutional taking for a private use. *See* Mot. at 23. ESD's position that only a fee title is "property" under the Takings Clause is contrary to decades of precedent holding that a leasehold interest is a classic property interest. *See U.S. v. Petty Motor Co.*, 327 U.S. 372, 379 (1946); Mot. at 24 (citing cases). None of ESD's cases deal with bona fide forced physical occupations as mandated by the Amendments here. *See Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 225 (1986) (holding that, under regulatory taking analysis, employers' liability for withdrawing from pension plans merely "adjusts the benefits and burdens of economic life to promote the common good"); *Cmty. Hous. Improvement Program v. City of N.Y.*, 59 F.4th 540, 551 (2d Cir. 2023) (finding that residential rent stabilization laws did not affect taking where "States have broad power to regulate housing conditions in general").

### C. Substantive Due Process

A substantive due process violation occurs where, as here, government action is "arbitrary, or conscience shocking, in a constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998). The Amendments meet this standard. Providing the Greys with permanent and exclusive access to the Demised Premises constitutes unequal, arbitrary treatment that lacks any legitimate public purpose. (Mot. at 25-26.) And the Amendments arbitrarily exclude Plaintiff from participating in the process governing the Greys' occupancy and use. (*Id.*)

### D. Procedural Due Process

ESD's assertion that Plaintiff's claim fails because the Amendments were enacted through a "legislative process" misses the point. Procedural due process requires notice and a meaningful opportunity to be heard before the government deprives an individual of a protected property interest. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Fuentes v. Shevin*, 407 U.S. 67, 80-82 (1972). Plaintiff's leasehold is indisputably such an interest. Yet ESD purports to cede part of the Demised Premises to the Greys without any public hearing, administrative process, or fact-finding.

## V. THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST OVERWHELMINGLY FAVOR THE CONSERVANCY

Absent an injunction, Plaintiff faces irreversible loss of its vested leasehold rights, permanent displacement from portions of the Premises, and disruption of its statutory mission to restore and operate the Armory. Courts recognize such loss of constitutional and property rights as irreparable harm tipping the balance toward Plaintiff. *See Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.*, 598 F.3d 30, 38 (2d Cir. 2010); *Jolly*, 76 F.3d at 482. By contrast, ESD suffers no hardship from maintaining the *status quo*. In fact, ESD has no

interest in enforcing an unconstitutional statute. *A.H. v. French*, 985 F.3d 165, 184 (2d Cir. 2021).

## VI. THE GREYS ARE NOT A NECESSARY PARTY

The relevant inquiry under Rule 19 is whether complete relief can be awarded "among existing parties" (*i.e.*, Plaintiff and ESD) in the absence of the Greys. The answer is yes. *See Nassau & Suffolk Cnty Taxi Owners Ass'n v. New York*, 336 F. Supp. 3d 50, 73 (E.D.N.Y. 2018) (where "constitutional claim implicates the duties and responsibilities of the State of New York and its officials alone," absence of other parties "does not prevent the Court from granting complete relief"). "Any harm [the Greys] would suffer as a result of a negative outcome in this litigation would not be caused by their absence from the litigation. Rather, such harm would be caused by a finding that [the Amendments] violated Plaintiff['s] [constitutional] rights." *Id*. at 74.

## CONCLUSION

For all of these reasons, the Motion should be granted in its entirety.

Dated: New York, New York
October 15, 2025

                                        LOEB & LOEB LLP

                                        By:   /s/ *Joshua E. Hollander*

                                              Joshua E. Hollander
                                              Katherine C. Gauthier
                                              Jacob M. Sievers
                                              345 Park Avenue
                                              New York, New York 10154
                                              jhollander@loeb.com
                                              kgauthier@loeb.com
                                              jsievers@loeb.com
                                              (212) 407-4000

                                              *Attorneys for Plaintiff Seventh Regiment Armory Conservancy, Inc.*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(c), the undersigned hereby certifies that the foregoing brief complies with the Rule's applicable word-count limitation because it contains 3,497 words according to the word count of the word-processing software used to prepare this document, excluding the caption, table of contents, table of authorities, and signature block, but including material contained in footnotes.

/s/ *Joshua E. Hollander*  
Joshua E. Hollander