UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SEVENTH REGIMENT ARMORY CONSERVANCY, INC.,

Plaintiff,

- against -

HOPE KNIGHT, in her official capacity as President, Chief Executive Officer, and Commissioner of Empire State Development Corporation,

Defendant.

No. 1:25-cv-7373-GBD-BM

# JOINT STATUS REPORT

Pursuant to the Court's May 20, 2026 Order (ECF No. 49), Plaintiff Seventh Regiment Armory Conservancy, Inc. ("Plaintiff" or the "Conservancy") and Defendant Hope Knight ("Defendant") (collectively "the Parties"), by and through their undersigned counsel, respectfully submit this joint status report.

The status conference is currently scheduled in person on August 19, 2026. However, as stated in the accompanying letter from Plaintiff, counsel was recently informed that he has to travel out of state next week on another case matter and therefore is unable to attend the status conference in person on August 19. Plaintiff therefore respectfully requests that the August 19 status conference be held remotely. Plaintiff conferred with Defendant on this issue and Defendant does not object to holding the conference remotely.

## I. SETTLEMENT DISCUSSIONS

Pursuant to the Court's May 20, 2026 order, counsel for the parties engaged in a settlement discussion on July 28, 2026. Plaintiff's counsel conveyed a settlement offer to Defendant. Defendant does not agree to the terms of Plaintiff's proposal, and respectfully submits that further settlement discussions would not be productive at this time.

## II. DOCUMENT PRODUCTION AND ESI

### A. Plaintiff's Position

At the Initial Case Management Conference held on February 24, 2026, the parties agreed to a three-month expedited discovery schedule given the narrow scope of the issues in this case: a constitutional challenge to two legislative amendments as applied to the Conservancy. This is not a large-scale commercial litigation warranting expansive e-discovery; it is a focused constitutional case with discrete legal questions. At the Initial Case Management Conference, Defendant's counsel appeared to share the same understanding concerning the scope of discovery. Since then, however, Defendant has pursued a discovery strategy wholly inconsistent with the nature of this action.

As explained at the May 20, 2026 status conference, the Conservancy was served with 64 extraordinarily broad and untethered document requests (the "Requests"), many of which bear no relationship whatsoever to the constitutional issues presented. (A true and correct copy of the Requests is attached hereto as **<u>Plaintiff's Exhibit A</u>**.) The extraordinary burden imposed by the Requests has hindered the Conservancy's discovery efforts from the outset and was the impetus for the extension granted by the Court of the initial discovery schedule. (Doc. 49.) Notably, despite the Conservancy's timely responses and valid objections to the Requests, Defendant to date has not served any amended requests and has not withdrawn any requests. (A true and correct copy of the Conservancy's responses and objections are attached hereto as **<u>Plaintiff's Exhibit B</u>**.)

The scope of the Requests underscores the unreasonableness of Defendant's stated position. Defendant has demanded, among other things, the entirety of the Conservancy's funding records for nearly half a decade and all organizational documents going back to its inception in 2001, every photograph and videotape relating to any allegation in the Complaint spanning more than a decade, and, incredibly, "[a]ll documents relating to Plaintiff's use of the Armory for any purpose," which would essentially entail every single piece of paper that Plaintiff possesses. (Ex. A, Request Nos. 15, 19, 20, 24, 25, 29, 30, 58.) Other overbroad Requests seeking plainly nonrelevant information include "[a]ll agreements between Plaintiff and any organization between 2006 and 2022," "[a]ll documents relating to Plaintiff's use of the Armory for hosting social events," "[a]ll communications [with] any public relations firm or lobbying firm," and "[a]ll communications [with] any member of Community Board 8." (*Id.*, Request Nos. 11, 12, 24, 28.) None of these Requests bear any relationship to whether two statutory amendments unconstitutionally impair the Conservancy's vested contractual and leasehold rights under the Contracts Clause or Takings Clause.

The Conservancy expressly disputes Defendant's characterization that it has been dilatory or failed to comply with its discovery obligations. To the contrary, the Conservancy has acted diligently and in good faith throughout. Following multiple meet-and-confers, the Conservancy collected nearly two decades' worth of data and applied Defendant's proposed search terms to its email custodians. Those search terms returned nearly 13,000 emails—an inordinate and wholly disproportionate volume for a case of this nature. (A true and correct copy of the search terms "hit report" is attached hereto as **<u>Plaintiff's Exhibit C</u>**.) The Conservancy provided the search

term "hit report" to Defendant on July 6, and has twice requested that Defendant narrow the search terms to a scope proportional to the limited issues in this constitutional case. To date, Defendant has declined to narrow the search terms.

As to emails, the Conservancy's position is that only two time periods are relevant to the issues in this case: (1) the period surrounding the signing of the Conservancy's lease with ESD in 2006; and (2) the period surrounding the events when the Knickerbocker Greys vacated the premises and the two challenged amendments were passed in 2024. Defendant's insistence on a date range spanning from 2006 to the present—nearly twenty years—is wholly disproportionate to the needs of this case. Moreover, significant numbers of non-responsive emails and "mishits" appear within the search results, further demonstrating the need for more targeted search terms.

Notwithstanding the foregoing, the Conservancy has already made an initial document production, anticipates making an additional document production as soon as next week, and intends to meet the August 28, 2026 production deadline requested by ESD. The Conservancy likewise intends to produce relevant emails by no later than September 3, 2026, the date requested by ESD, but requires Defendant to narrow the search terms and date ranges to do so in a manner consistent with the proportionality requirements of Federal Rule 26.

The Conservancy respectfully requests that the Court direct the parties to further meet and confer regarding the appropriate scope of document discovery in this case, including appropriately tailored search terms and date ranges for email productions. If necessary, the Court should exercise its authority under Federal Rule 26 to limit the scope of discovery to the actual needs of this case.

**B. Defendant's Position**

Defendant notes at the outset that it sent Plaintiff a draft of this joint report at 11:07 a.m. on August 11, 2026, but received Plaintiff's response at 4:02 p.m. today, when this joint report was due. Plaintiff's position contains several mischaracterizations, and contains information regarding deposition scheduling that was not previously conveyed to Defendant. Defendant will address these issues with the Court at the upcoming conference. However, in the interest of filing this report by today's deadline, Defendant states its position as follows:

Defendant served its first set of document production requests on March 13, 2026. **Defendant's Ex. A**. Plaintiff served its responses and objections on April 13, 2026. **Ex. B.** Plaintiff objected to most of Defendant's requests, and failed to produce a single document, nor indicate what responsive documents would be produced. On April 28, 2026, Defendant served upon Plaintiff a meet-and-confer letter, along with proposed ESI search terms. **Ex. C.**

The parties subsequently held a telephone meet-and-confer discussion on May 11, 2026, in which Defendant's counsel further explained the justification for the requests, as well as Defendant's willingness to compromise on Plaintiff's production. The parties conveyed this discussion to the Court both in the May 15, 2026 joint status report (ECF No. 48) and during the May 20, 2026 conference. On June 2, 2026, the parties resumed their meet-and-confer discussion. On June 15, 2026, Plaintiff's counsel represented that Plaintiff "anticipate[s] making a substantial

document production by no later than next week." **Ex. D.**

Plaintiff, however, failed to produce any documents by the end of June. Upon multiple follow-ups by Defendant's counsel, Plaintiff's counsel finally produced 37 documents totaling 437 pages on July 31, 2026, four-and-a-half months after being served with Defendant's requests. **Ex. E.** Plaintiff's production was anything but "substantial," and was flatly inconsistent with the representations that Plaintiff had earlier made both to Defendant and to the Court. In particular, the majority of the documents were simply pulled off the docket in the landlord-tenant case between Plaintiff and the Knickerbocker Greys. Plaintiff produced only a small handful of documents that Defendant had not seen before, including a few charts purporting to show the usage of certain spaces inside the Armory. In short, Plaintiff's paltry document production, after a months-long delay, is both inexcusable and highly prejudicial to Defendant. Indeed, if Defendant had known that Plaintiff's production would be wholly deficient, Defendant would have raised this issue with the Court much sooner.

Accordingly, Defendant respectfully requests that Plaintiff produce responsive documents, or confirm whether no responsive documents exist for any document requests, no later than **August 28, 2026** in light of the upcoming Rule 30(b)(6) deposition scheduled for September 10, 2026. As discussed in Defendant's April 28, 2026 letter annexed to Exhibit C, Defendant's document requests fall into broad categories.[1] For example, Request Nos. 43-62 pertain to the declarations Plaintiff filed in support of its motion for a preliminary injunction on October 15, 2026. ECF Nos. 26-29. Although Plaintiff's counsel represented on June 2 that Plaintiff would produce responsive documents, Plaintiff's July 31, 2026 production was wholly lacking aside from the small handful of charts referenced above. And Plaintiff's failure to produce specific documents referenced in these declarations is baffling: for example, Document Request No. 43 sought documents relating to Plaintiff's contract with the European Fine Art Foundation ("TEFAF"), which was referenced in Rebecca Robertson's October 14, 2026 supplemental declaration. ECF No. 43. Plaintiff's failure to produce this contract is inexplicable given its centrality to Plaintiff's claims.

Moreover, a number of the document requests pertained to the allegations in the Complaint. *See* Request Nos. 15, 19, 20, 21, 24, 25, 26, 27, 28, 29, 30, 32, 36, 37, 38, 39, 40, 41, and 42. Defendant's April 28 letter explained the justification for these requests in light of the breadth of the allegations in the Complaint, extending more than 25 years. *See* April 28 Letter, at 3-5. During the parties' meet-and-confer discussions, Defendant's counsel explained that Defendant is willing to compromise regarding the scope of documents to be produced. For example, although documents relating to Plaintiff's funding and 2018 capital campaign are highly relevant based upon the allegations in the Complaint (April 28 letter at 3-4), Defendant would be satisfied with a production giving a basic picture of Plaintiff's funding during the time period alleged in the Complaint. Yet Plaintiff's July 31 production failed to include any documents at all.

---

[1] Given the fact that Plaintiff did not move for a protective order, and did not outright object to any of Defendant's document requests following the May 11 and June 2 meet-and-confer discussions, Defendant provides a broad overview of the document requests at issue. However, Defendant can provide more specific briefing regarding these document requests, pursuant to ¶ 2(b) of the Court's Individual Practices, should the Court request it.

Plaintiff has also failed to produce any hard-copy documents responsive to Request Nos. 8-14, pertaining to communications between Plaintiff and various parties. To the extent no responsive documents exist, Plaintiff has failed to provide any written confirmation. And if there are any emails pertaining to these requests, Defendant would request that all emails be produced by September 3, 2026, as discussed further below. Finally, Plaintiff failed to produce documents fully responsive to Request Nos. 17, 22, 63, and 64. The parties discussed each of these requests during the meet-and-confer discussions, yet the July 31 production is not consistent with prior discussions. For example, Plaintiff's counsel agreed on June 2 to re-produce all documents that Plaintiff had previously produced in discovery in the landlord-tenant case. Yet Plaintiff's July 31 production only included the Bates-numbered documents that were already publicly filed on the docket in that case.

Plaintiff's dilatory conduct with respect to ESI is equally concerning. As noted above, Defendant proposed targeted search terms on April 28. Yet after multiple follow-ups, Plaintiff produced the hit report only on July 6, 2026, for a total of 12, 754 documents. During a July 9 meet-and-confer discussion, Plaintiff's counsel requested that Defendant further narrow the search terms. On July 14, 2026, Defendant proposed that Plaintiff use Technology Assisted Review (TAR) to complete the ESI review. **Ex. F.** On July 28, Plaintiff's counsel objected to the use of TAR, and instead agreed to produce a hit report with year-by-year breakdowns. However, Plaintiff has failed to produce this updated chart. In light of the upcoming Rule 30(b)(6) deposition scheduled for September 10, 2026, Defendant requests that Plaintiff utilize TAR to review the ESI population, and produce all responsive emails no later than **<u>September 3, 2026</u>**, so that Defendant has sufficient time to review the emails prior to the deposition.

## III. DEPOSITIONS

On March 20, 2026, Defendant served upon Plaintiff a Rule 30(b)(6) deposition notice. The parties previously agreed to schedule the deposition for September 10, 2026. However, due to recent programming changes at the Park Avenue Armory in September, September 10 may no longer work for the 30(b)(6) deposition since the relevant witnesses will be fully consumed with preparing for opening night of a new play. Plaintiff's counsel will confer with Defendant's counsel on scheduling. Plaintiff anticipates that September 16 will work for the deposition.

Defendant also served a subpoena upon Kirsten Reoch, who was formerly employed by Plaintiff. As discussed with the Court during the May 20 conference, Plaintiff takes the position that Ms. Reoch's deposition testimony would be duplicative of Rebecca Robertson, who will be one of Plaintiff's Rule 30(b)(6) designees. The parties agreed to defer any motion practice regarding this deposition until after the Rule 30(b)(6) deposition.

Plaintiff intends to take a Rule 30(b)(6) deposition of Defendant, as well as the deposition of Hope Knight. Plaintiff intends to serve its deposition notices by next week.

## IV. EXPERT DISCOVERY

Defendant does not intend to retain any expert at this time, as Plaintiff has not indicated whether it will call an expert. Plaintiff also does not intend to retain any expert at this time.

Date: New York, New York
August 12, 2026

**LOEB & LOEB LLP**
Counsel for Plaintiff

By: *<u>/s/ Joshua E. Hollander</u>*
Joshua E. Hollander
jhollander@loeb.com
Katherine C. Gauthier
kgauthier@loeb.com
Jacob M. Sievers
jsievers@loeb.com
345 Park Avenue
New York, New York 10154
(212) 407-4000

**LETITIA JAMES**
New York State Attorney General
Counsel for Defendant

By: *<u>/s/ Yuval Rubinstein</u>*
Yuval Rubinstein
Special Litigation Counsel
28 Liberty Street
New York, New York 10005
(212) 416-8673
yuval.rubinstein@ag.ny.gov